**Dated: October 16, 2019**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-11872-JDL |
| Vetter Assets Service, LLC, et al.,[1] | ) | Ch. 11 |
| | ) | Jointly Administered |
| Debtor in Possession, | ) | |
| | ) | |
| ValorBridge Partners, LLC, a Georgia limited liability company | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV. 19-1063-JDL |
| | ) | |
| Intrust Bank, N.A. | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

**I. Introduction**

This is an adversary proceeding brought by Plaintiff ValorBridge Partners, LLC

---

[1] Debtors in these Chapter 11 cases are: Vetter Assets Service, LLC, Case No. 19-11872; A Better Used Trux, LLC, Case No. 19-11873-JDL; and Source One Capital, LLC, Case No. 19-11874.

("ValorBridge"), a secured creditor of the Debtor, Source One Capital, LLC ("SOC"), against Defendant Intrust Bank, N.A. ("Intrust"), another secured creditor of SOC, seeking to equitably subordinate Intrust's claim pursuant to 11 U.S.C. §§ 510 and 506.[2]

Pursuant to Fed.R.Civ.P. 12(b)(6), applicable to bankruptcy proceedings by Fed.R. Bankr.P. 7012(b)(6)[3], Intrust has moved to dismiss ValorBridge's Amended Complaint on the basis that it fails to state a claim for relief upon which relief can be granted. Before the Court for consideration are *Intrust Bank's Motion to Dismiss for Failure to State a Claim* (the "Motion") [Doc. 7], the *Response and Objection to Motion to Dismiss* filed by ValorBridge (the "Response") [Doc. 8] and *Intrust Bank's Reply Brief in Further Support of its Motion to Dismiss* [Doc. 12]. The below constitute the Court's Findings of Fact and Conclusions of Law required by Rules 7052 and 9014.

## II. Jurisdiction

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) as a matter arising under 11 U.S.C. §§ 510 and 506 and the Order of Reference contained in Local Rule LCvR 81.4 for the United States District Court for the Western District of Oklahoma. Pursuant to 28 U.S.C. § 157(b)(2)(K), this action is a core proceeding since it relates to the validity, extent, or priority of liens. Further, both parties have consented to entry of final orders or judgment by the bankruptcy court pursuant to Rules 7008 and 7012(b).

---

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[3] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

2

### III. The Standards for a Motion to Dismiss

A motion to dismiss for "failure to state a claim upon which relief can be granted" is governed by Rule 12(b)(6), made applicable to adversary proceedings by Rule 7012. The purpose of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). In considering a motion to dismiss, the Court must evaluate the facts alleged in the complaint in the light most favorable to the plaintiff. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). The Court must construe a complaint in the light most favorable to the plaintiff, taken as true all factual allegations and making all reasonable inferences in the plaintiff's favor that can be drawn from the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). "That the Court excepts them as true, however, does not mean allegations in the complaint are in fact true; a plaintiff is not required to prove his case at the pleading stage." *Higginbottom v. Mid-Del School District,* 2016 WL 951691 *2 (W.D. Okla. 2016). The Court must not "weigh potential evidence that the parties might present at trial" in order to test the sufficiency of the complaint. *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). It is well recognized that "granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice". *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain enough facts to state a cause of action that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). In *Twombly*, the Supreme Court

3

ruled that a complaint "does not need detailed factual allegations," but must contain "enough facts to state a claim to relief that is *plausible* on its face." *Id.* (Emphasis added). In other words, the plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Id.* Thus, in *Twombly*, the Supreme Court formulated a "plausibility standard" for evaluating whether a complaint survives a motion to dismiss. *In re Ward*, 589 B.R. 424, 427 (Bankr. W.D. Okla. 2018).

In applying *Twombly's* "plausibility standard", the Tenth Circuit has held that the standard lies as a middle ground between "heightened fact pleading" and "formulaic recitation of the elements of a cause of action." *Robbins v. Oklahoma, ex rel., Department of Human Services*, 519 F.3d 1242, 1247 (10th Cir. 2008). See also *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Cook v. Baca,* 512 Fed.Appx. 810, 821 (10th Cir. 2013)*; Lamar v. Boyd,* 508 Fed. Appx. 711, 713-14 (10th Cir. 2013); *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (a complaint must give the court reason to believe the plaintiff has a reasonable likelihood of mustering factual support for the claims raised). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Bare legal conclusions and simple recitations of the elements of a cause of action do not satisfy this standard. *Twombly*, 550 U.S. at 555; *In re AgFeed USA, LLC*, 546 B.R. 318, 337 (Bankr. D. Del. 2016) (A complaint is insufficient when its allegations simply mirror the language of the applicable statutory section).

## IV. The Allegations of the Complaint

As an introductory matter, although the Debtor in this adversary is SOC, there are two affiliates of SOC which are also in bankruptcy and whose identification is necessary to understand the allegations of ValorBridge's Amended Complaint: A Better Used Trux, LLC ("ABUT") and Vetter Assets Service, LLC ("VAS"). These three entities are generally referred to herein by the stated abbreviations, or may be at times collectively referred to as "Debtors".

Since a motion to dismiss is judged on the well-pled allegations of a complaint being accepted as true, the substantive allegations of Plaintiff''s Amended Complaint, [Doc. 4], need to be examined, and the Court must determine whether the Complaint alleges sufficient facts supporting all the elements necessary to establish an entitlement to relief under the claims raised. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007). The relevant factual allegations of the Amended Complaint are as follows:

1. On October 1, 2015, Intrust made a loan to SOC in the original principal amount of $2,800,000 ("Intrust Loan No. 1"). Intrust Loan No. 1 was guaranteed by ABUT and Brian Vetter and was to mature on September 29, 2016.

2. Under the terms of the Intrust Loan No. 1, SOC covenanted to maintain all books and records in accordance with GAAP and permit Intrust to examine and audit its books. SOC further covenanted to provide, among other things, annual tax returns, quarterly and year-end financial statements, monthly listing of lease receivables and copies of all leases. In addition, ABUT covenanted to provide year-end financial statements.

3. To secure repayment of Intrust Loan No. 1, on October 1, 2015, SOC executed and delivered to Intrust a Commercial Security Agreement ("Intrust Security Agreement").

Under the terms of the Intrust Security Agreement, SOC granted Intrust a security interest in SOC's accounts, deposit accounts, contract rights, inventory, equipment, machinery, furnishings, furniture, chattel paper, instruments, general intangibles and rights to payment of every kind, including, but not limited to, Schedule of Lease Receivables. The Intrust Security Agreement did not grant Intrust a security interest in any assets of VAS or ABUT.

4. Intrust perfected its security interest in SOC's assets by the filing of a Uniform Commercial Code ("UCC") Financing Statement in the Office of the Oklahoma County Clerk on October 12, 2015.  Intrust has not filed a financing statement claim relating to a security interest in any assets of VAS or ABUT.

5. On July 18, 2017, Intrust Loan No. 1 was renewed and modified under the terms of Amendment Number Two to Business Loan Agreement ("Intrust Loan Amendment Two")  which, among other things, added VAS as an additional guarantor of Intrust Loan No. 1.  As part of the same transaction, SOC executed a promissory note ("Intrust Loan Amendment Two Note") which refinanced the outstanding balance on Intrust Loan No. 1 in the amount of $2,550,000.

6. On December 29, 2017, the Debtors executed and delivered to ValorBridge a Secured Promissory Note ("VBP Note") in the amount of $1,250,000.  The funds advanced under the VPS Note were utilized by the Debtors to pay off all existing indebtedness owed by VAS and ABUT, to pay off a secured loan to BancFirst and for use as working capital by the Debtors.

7. To secure payment of the VBP note, on December 29, 2017, Debtors executed and delivered to ValorBridge a Security ("VBP Security Agreement") which granted ValorBridge a security interest in all personal property of the Debtors, including but not

limited to, all accounts and rights to payment, general intangibles, instruments, documents of title, furniture, fixtures, equipment, and inventory, as well as proceeds and products thereof and all after-acquired property (the "VBP Collateral"). Under the terms and conditions of the VBP Security Agreement, ValorBridge was granted a first and prior perfected security interest in all assets of VAS and ABUT.

8. ValorBridge perfected its security interest in the VBP Collateral by filing its UCC Financing Statements in the office of the County Clerk of Oklahoma County and the Delaware Department of State.

9. Under the terms of the Intrust Loan No. 1, as modified by Intrust Loan Amendment Two, the Debtors were prohibited from borrowing funds from any other lender without the express written consent of Intrust. Prior to closing and funding the VBP Note, the Debtors and ValorBridge sought and obtained the express written consent of Intrust to the terms and conditions of the VBP Loan Documents.

10. On December 28, 2017, Intrust executed and delivered to ValorBridge an "Acknowledgment and Consent" to the VBP Note, the VBP Security Agreement and the VBP Pledge Agreement (the "Intrust Consent"). By the Intrust Consent, Intrust consented to the first priority security interest granted by the Debtors to ValorBridge in the VBP collateral and acknowledged and consented to the filing of the financing statements by VBP to perfect its first priority security interest in the VBP Collateral.

11. Under the terms of the VBP Note, as acknowledged and consented to by Intrust, the Debtors were prohibited from amending or modifying the terms of the Intrust Loan Amendment Number Two Note or any agreement or instrument in connection therewith or incurring any additional indebtedness (including with Intrust) without the

express written consent of ValorBridge.

12. On or about September 18, 2018, without the express written consent of ValorBridge, Intrust and SOC modified the terms of the Intrust Loan Amendment Number Two Note by extending the maturity date for repayment of the balance of January 18, 2021, to October 2, 2021, and by increasing the monthly payments due from SOC.

13. During the period from the date the VBP Note was funded to the date of execution of the Intrust Note Number Three, Intrust extended additional financial accommodations to SOC without the consent of ValorBridge such that the balance on the Intrust Loan Amendment Number Two Note did not decrease as required by the terms of that note.

14. Neither Intrust nor the Debtors sought or obtained the consent of ValorBridge to the execution and delivery of the Intrust Note Number Three for the financial accommodations provided to SOC in the period of time between the execution of the VBP Note and execution of the Intrust Note Number Three.

15. By acknowledging and consenting to the VBP Note, VBP Security Agreement, VBP Pledge Agreement, and the security interest granted to ValorBridge by the Debtors, Intrust knew or should have known that ValorBridge was relying on the restrictions set forth in the VBP Note prohibiting Intrust from modifying the payment schedule of Intrust Loan Amendment Number Two. ValorBridge reasonably relied upon such restrictions in the VBP Note and Intrust's Consent thereto.

16. As of the date of the execution of the Intrust Note Number Three, the balance due on Intrust Loan Amendment Number Two Note should have been reduced to a principal amount of $1,747,691.71. However, as a result of the financial accommodations

granted to SOC by Intrust, the balance had only been reduced to a principal amount of $2,391,000, a difference of $643,308.23.

17. The conduct of Intrust in modifying the Intrust Loan Amendment Number Two was inequitable, a breach of its agreement with ValorBridge, and caused harm to ValorBridge by deteriorating ValorBridge's second lien position on the assets of SOC.

18. The secured claim of Intrust in the assets of SOC should be wholly subordinated to the perfected secured claim of ValorBridge, or at the very least the sum of $643,308.23 of the secured claim of Intrust in the assets of SOC should be subordinated to the secured claim of ValorBridge.

19. The Amended Complaint requests that the Court subordinate the secured claim of Intrust in the assets of SOC to the perfected secured claim of ValorBridge fully or, in the alternative, in the amount of $643,308.23; that the Court determine that ValorBridge holds a first and superior perfected security interest in the BancFirst Collateral, and that ValorBridge recover its attorney's fees and costs.

## V. Discussion

Intrust's Motion to Dismiss asserts that ValorBridge's Amended Complaint fails to state a claim for equitable subordination under 11 U.S.C. § 510.  Section 510 of the Bankruptcy Code permits subordination of claims in specific circumstances.  Relevant to the present case is § 510(c) which states that courts may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim..."  11 U.S.C. § 510(c)(1).  Equitable subordination is a remedy intended to "ensure fairness in the bankruptcy process as a whole," rather than securing fairness between particular creditors.  *In re QuVIS, Inc.*, 469 B.R. 353, 366 (D.

Kan. 2012) (quoting *Norton Bankruptcy Law & Practice* § 53:3 (3d ed. 2012)); *In re Big Wheel Holding Co., Inc.*, 214 B.R. 945, 953 (D. Del.1997). It is well established that "equitable subordination is an extraordinary remedy to be employed by courts sparingly." *In re Alternate Fuels, Inc.*, 789 F.3d 1139, 1154 (10th Cir. 2015)

Tenth Circuit equitable subordination case law requires that three elements be established by the Plaintiff: (1) that the claimant has engaged in some type of inequitable conduct; (2) that the misconduct has resulted in injury to the creditors or conferred an unfair advantage to the claimant; and (3) that subordination of the claim is not inconsistent with the Bankruptcy Code. *In re Hedged-Investments Associates, Inc.,* 380 F.3d 1292, 1300 (10th Cir. 2004); *Sloan v. Zions First National Bank (In re Castletons, Inc.)*, 990 F.2d 551, 559 (10th Cir. 1993); *In re 5000 Skelly Corp.*, 142 B.R. 442, 446 (Bankr. N.D. Okla. 1992); *In re Rent-Rite Superkegs West, Ltd.,* 603 B.R. 41, 85 (Bankr. D. Colo. 2019). Our Circuit has identified inequitable conduct as "the critical inquiry". *Castletons*, 990 F.2d at 559 (In considering these factors, "[t]he critical inquiry ... is whether there has been inequitable conduct on the part of the party whose debt is sought to be subordinated."); *In re QuVIS, Inc.,* 446 B.R. 490, 499 (Bankr. D Kan. 2011). "Focusing on this element determines the Plaintiff's equitable subordination claim." *Id.*

The Tenth Circuit has identified three categories of misconduct: (1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego. *In re Hedged-Investments Associates, Inc.*, 380 F.3d 1292, 1301 (10th Cir. 2004). Neither the second nor third categories is at issue in this case. It is clear from the Amended Complaint that any claim for equitable subordination would fall, if at all, within the first category of "misconduct". However, ValorBridge does not

10

allege that Intrust committed any act of "fraud, illegality, or breach of fiduciary duty." Rather, it only alleges that Intrust's modifying its loan agreements and extending additional financial accommodation to SOC in alleged violation of the Acknowledgment and Consent Agreement was "inequitable". "Generally, it is not enough to simply allege that a defendant engaged in 'inequitable conduct', [and] the party seeking equitable subordination must allege conduct that fits within one of these three categories." *Carter-Waters Oklahoma, Inc. v. Bank One Trust Co., N.A.. (In re Eufaula Industrial Authority)*, 266 B.R. 483, 489 (10th Cir. BAP 2001); *Rent-Rite Superkegs West, Ltd.*, 603 B.R. at 85; *In re Granite Partners, L.P.,* 210 B.R. 508, 515 (Bankr. S.D. N.Y. 1997) ("[I]t is not enough to allege simply that the defendant engaged in 'inequitable conduct'; the party seeking equitable subordination must allege conduct that fits within one of the these three paradigms."); *In re Lois/USA, Inc.*, 264 B.R. 69, 135 (Bankr. S.D. N.Y. 2001).

In its Response and Objection to Intrust's Motion, not in the Amended Complaint, ValorBridge alleges that "Intrust's conduct was 'inequitable' and that Intrust occupied a fiduciary position." [Doc. 8, pg 5]. ValorBridge acknowledges, however, that though it "did not use the words 'fiduciary duty' in its Amended Complaint, the facts alleged nonetheless establish that such a relationship existed between ValorBridge and Intrust and that Intrust breached that duty." *Id*. There are at least two problems with Valorbrige*'s* argument. First, if it believed it was in a fiduciary relationship with Intrust, it was incumbent upon ValorBridge to have alleged it. Second, and perhaps more importantly, as a matter of law the allegations of the Amended Complaint, even if accepted as true, do not show that such a fiduciary relationship existed.

The Court recognizes, as argued by ValorBridge, that Oklahoma courts have not

11

given a precise definition of a fiduciary relationship, see *MidAmerica Federal Savings & Loan Association v. Shearson/American Express Inc.*, 886 F.2d 1249, 1257 (10th Cir. 1989), are not limited to any specific legal relationship but may arise whenever

> there is confidence reposed on one side and resulting domination and influence on the other.... [A] fiduciary relationship springs from an attitude of trust and confidence and is based on some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation.

*Lowrance v. Patton,* 710 P.2d 108, 112 (Okla. 1985); *Devery Implement Co., v. J.I. Case Co.,* 944 F.2d 724, 730 (10th Cir. 1991). Another Oklahoma court described the relationship as occurring "'when the circumstances make it certain the parties do not deal on equal terms, but on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible.'" *In re Kelley*, 215 B.R. 468, 472 (10th Cir. BAP 1997) (quoting *In re Estate of Beal*, 769 P.2d 150, 155 (Okla 1989).

ValorBridge argues that given the flexible definition of "fiduciary" under Oklahoma law, its allegations in the Amended Complaint that "Intrust knew or should have known that ValorBridge was relying on the restrictions set forth in the VBP Note" ... and that it "reasonably relied upon such restrictions in the VBP Note and Intrust's Consent" sufficiently constitutes facts stating a claim of fiduciary status. [Doc. 4, ¶ 35]. Under the Oklahoma law cited above, however, those allegations do not state a claim of establishing fiduciary status.

In its Response and Objection, ValorBridge attempts to supplement the allegations of the Amended Complaint by explaining that "ValorBridge and Intrust had a relationship whereby ValorBridge placed its trust and confidence in Intrust, and relied on Intrust's (sic)

integrity, such that Intrust would not modify its loan to the detriment of ValorBridge." [Doc. 8, pg. 7]. Assertions of "trust and confidence" and relying upon the other contracting party's "integrity" is not sufficient to create a fiduciary relationship. As stated in *Devery Implement Co. v. J. I. Case Co.*, 944 F.2d 724, 730 (10th Cir. 1991):

> Certainly, most contracts involve a degree of the factors indicative of reposed trust and confidence. For example, all contracts ultimately involve mutual intent, and many involve disparate bargaining power; however, only those instances which involve a veritable 'substitution of the will of the defendant for that of the plaintiff in material matters involved in the transaction' will give rise to fiduciary duties. *Sellers v. Sellers,* 428 P.2d 230, 236 (Okla.1967) (citing *Derdyn v. Low,* 94 Okl. 41, 220 P. 945 (Okla.1922)). This ensures that common commercial dealings are not subject to heightened fiduciary responsibilities. As we have held, parties may deal at arms length for mutual profit without subjecting themselves to heightened fiduciary duties. See *Appleman v. Kansas-Nebraska Natural Gas Co.*, 217 F.2d 843, 848-49 (10th Cir. 1955).

A non-insider creditor "generally owes no fiduciary or contractual duty to the other creditors of a debtor ..." *Eufaula Industrial Authority*, 266 B.R. at 489. Absent more, "a simple breach of contract is insufficient to support a claim of equitable subordination." *In re Daewoo Motor America, Inc.*, 471 B.R. 721, 748 (C.D. Cal. 2012); *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1357 (7th Cir. 1990); *80 Nassau Associates v. Crossland Federal Savings Bank (In re 80 Nassau Associates),* 169 B.R. 832, 838 (Bankr. S.D. N.Y. 1994). Accepting ValorBridge's argument that its inter-creditor contractual transaction created a fiduciary relationship because it was entering into the same in reliance upon Intrust's integrity would be tantamount to making almost any commercial contractual agreement a fiduciary relationship. What ValorBridge *might* have is a claim for breach of contract or another theory which need not be litigated in this

13

bankruptcy.[4]

While the circumstances are "few and far between", a fiduciary duty may also exist where non-insider, non-fiduciary creditor's claims are involved, but the level of pleading and proof is even higher. The more arms-length or bona fide the transaction, the less possibility of its inequitability. *Kham & Nates Shoes,* 908 F.2d at 1356 ("Cases subordinating the claims of creditors that dealt at arms length with the debtor are few and far between."). A majority of courts, including those within the Tenth Circuit have described the degree of inequitable conduct warranting equitable subordination as "gross and egregious, tantamount to fraud, misrepresentation, overreaching or spoliation, or involving moral turpitude." *Alternate Fuels,* 789 F.3d at 1155; *Eufaula Industrial Authority*, 266 B.R. at 489; *In re Sunbelt Grain WKS, LLC*, 406 B.R. 918, 935 (Bankr. D. Kan. 2009). See, *In re Epic Capital Corp,* 2003 WL 683165 (Bankr. D. Del. 2003) (although distinguishable upon its facts from the present case, the court held that equitable subordination was not warranted, even though a subsequent secured lender took its lien in violation of a prior creditor's negative pledge clause). The Amended Complaint is devoid of any allegation of any conduct by Intrust that was sufficiently egregious to meet the higher standard that applies to non-insiders and non-fiduciaries.

For the reasons stated above, the Court concludes that Oklahoma law would not recognize the circumstances alleged here as involving a fiduciary relationship. Furthermore, the Amended Complaint does not allege any act required to state a claim for

---

[4] The Court says "might" because it is not clear that the Acknowledgment and Consent executed by Intrust imposed upon it any contractual liability to comply with the terms and conditions of the Secured Promissory Note and Security Agreement and Pledge Agreement between ValorBridge and the Debtors.

equitable subordination by a non-insider, non-fiduciary creditor. Accordingly,

**IT IS ORDERED** that *Intrust Bank's Motion to Dismiss for Failure to State a Claim* [Doc. 7] is **Granted.**

# # #